RANDY S. GROSSMAN
United States Attorney
CHRISTOPHER ALEXANDER, Cal Bar No. 201352
VALERIE H. CHU, Cal Bar No. 241709
Assistant U.S. Attorneys
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Tel: (619) 546-6665 / 6750
Email: Christopher.m.alexander@usdoj.gov / valerie.chu@usdoj.gov

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ANTHONY DUANE BELL, SR (1),<br>ANTHONY DUANE BELL, JR (2),<br><br>Defendants. | Case No. 20CR2887-WQH<br><br>**UNITED STATES' RESPONSE TO DEFENDANTS' MOTIONS *IN LIMINE* TO:**<br>1. Sever Defendants for Trial [171-1]<br>2. Submit Forfeiture to Jury [171-2]<br>3. Exclude 404(b) / Bad Acts [171-3, 172-2]<br>4. Exclude Expert Testimony [171-4, 172-3];<br>5. Dismiss under the Speedy Trial Clause [171-5];<br>6. For Joinder [171-6, 172-9];<br>7. Sever Charges for Bell JR [172-1]<br>8. Allow Attorney Voir Dire [172-4];<br>9. Exclude Indictment [172-5];<br>10. Exclude Evidence of Financial Condition [172-6];<br>11. For Preliminary Jury Instruction Conference [172-7]; and<br>12. Allow Question-by-Question Evidentiary Objections [172-7].<br><br>Date:   June 7, 2023<br>Time:   1:30 p.m. |

The United States of America requests that the Court deny the motions *in limine* filed by Anthony Duane Bell, Sr. ("Bell SR") and Anthony Duane Bell, Jr. ("Bell JR"), except where unopposed, as discussed below.

# I

# RESPONSE TO DEFENDANTS' MOTIONS IN LIMINE

## 1. DEFENDANTS ARE PROPERLY JOINED FOR TRIAL AND *BRUTON* DOES NOT REQUIRE SEVERANCE

Bell SR argues that the Court should sever trial of the two defendants, arguing that if the prosecution introduces Bell JR's April 9, 2019 false statements at trial, and Bell JR chooses not to take the stand, then Bell SR will be deprived of his constitutional right to cross-examination in violation of *Bruton v. United States*, 391 U.S. 123, 126 (1968).

Bell SR is wrong for two independent reasons. First, even if Bell JR's statements are testimonial, they are not being offered for the truth. Second, Bell JR's statements lack inculpatory value without additional evidence.

"It is well-established that in the federal system there is a preference for joint trials where defendants have been jointly indicted." *United States v. Hernandez-Orellana*, 539 F.3d 994, 1001 (9th Cir. 2008). Under Rule 14 of the Federal Rules of Criminal Procedure, "[t]he burden is on the defendant to show 'clear,' 'manifest,' or 'undue' prejudice from a joint trial." *United States v. Mikhel*, 889 F.3d 1003, 1046 (9th Cir. 2018) (quoting *United States v. Polizzi*, 801 F.2d 1543, 1553-54 (9th Cir. 1986)). "[W]hen defendants have been properly joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993).

As held by this Court on May 24, 2023, the Bells' statements to agents on April 9, 2019 to agents were non-custodial. Dkt. No. 177, p.13 ("[b]ased upon the relevant caselaw and the totality of the circumstances, the interview of each Defendant was not custodial."). Among other statements, Bell JR falsely stated to agents during his April 9, 2019 interview the following: Bell JR had "never heard of" the company that Bell SR and Charles Burruss allegedly ran together and where Bell JR allegedly had worked (Count 32); Bell SR had never worked at a DME company before UMS (Count 33); Bell SR and Bell JR had started

UMS "from the ground up" (Count 34); and Bell JR ran the "day to day operations" at UMS (Count 35).

Bell SR asserts that Bell JR's April 9, 2019 statements were testimonial. But that is only part of the Confrontation Clause analysis. In *Crawford v. Washington*, 541 U.S. 36, 53-54, 59-60 n.9 (2004), the Supreme Court held that the Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial" if the statements are offered to "establish[] the truth of the matter asserted," unless the witness is unavailable and the defendant has had a prior opportunity for cross-examination. It is debatable whether Bell JR's statements were testimonial since Bell SR has failed to show that the primary purpose of the agents' interview was to gather testimony for a criminal prosecution. *See Davis v. Washington and Hammon v. Indiana*, 547 U.S. 813, 822 (2006) (holding that statements made in the course of questioning by law enforcement "are testimonial when the circumstances objectively indicate that there is no . . . ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."). Nevertheless, it is clear that Bell JR's statements are not being offered for their truth. As cited in *Crawford*, "'Testimony' … is typically 'a solemn declaration or affirmation made for the purpose of establishing or proving some fact.'" *Crawford,* 541 U.S. at 51 (citation omitted). On the contrary, Bell JR's statements were false and he is being prosecuted for those false statements. Thus, introducing Bell JR's false statements would not violate the Confrontation Clause.

Further, Bell JR's false statements sought to exculpate the Bells. As explained in *United States v. Mikhel*, 889 F.3d 1003, 1044 (9th Cir. 2018), the Supreme Court "held that there is no Confrontation Clause violation if the codefendant's confession must be linked to other evidence to incriminate the defendant." "*Bruton* does not require that all extrajudicial statements or confessions not be used in a joint trial. Rather, only those statements that 'clearly inculpate' the defendant or are 'powerfully incriminating' implicate the '*Bruton* rule.'" *Id*. at 1045 (citation omitted). Bell JR's false statements

tended to minimize Bell SR's (and his own) role in any crimes. Additional evidence is required to prove that Bell SR was involved in the criminal scheme. Thus, the introduction of Bell JR's statements would be consistent with the *Bruton* rule and the trial need not be severed.

## 2. FORFEITURE WILL BE SUBMITTED TO JURY BY A PREPONDERANCE

Defendants incorrectly contend that *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Southern Union Co. v. United States*, 567 U.S. 343 (2012) require the forfeiture allegations to be proved to a jury beyond a reasonable doubt. Dkt. No. 171, p.8. To the contrary, courts have uniformly held that these cases do not apply to criminal forfeiture, because there no statutory maximum for forfeiture. *See United States v. Bradley*, 969 F.3d 585 (6th Cir. 2020) (there is no constitutional right to a jury determination of forfeiture); *United States v. Eggleston*, 823 F. App'x. 340, 348 (6th Cir. 2020) (court held that *Apprendi* and *Southern Union* are inapplicable to forfeitures because "(1) forfeiture is not a fine and (2) there is no maximum for forfeitures."); *United States v. Lo*, 839 F.3d 777 (9th Cir. 2016) (the right to a jury verdict on forfeitability does not fall within Sixth Amendment protections and does not violate *Apprendi*); *United States v. Stevenson*, 834 F.3d 80 (2d Cir. 2016) (determinate sentencing schemes are meaningfully different than those establishing the amount of forfeiture and there is no right to a jury trial under Sixth Amendment); *United States v. Sigillito*, 759 F.3d 913, 935-36 (8th Cir. 2014) (collecting cases and holding that *Southern Union* does not apply to criminal forfeiture); *United States v. Simpson*, 741 F.3d 539, 560 (5th Cir. 2014) (because criminal forfeitures are "indeterminate and open-ended," there is no statutory maximum that would be exceeded by any factfinding by the judge, so *Apprendi* and *Southern Union* do not apply).

Although there is no constitutional right to a jury trial on forfeiture, Rule 32.2(b)(5) of the Federal Rules of Criminal Procedure provides that either party may request a jury trial to determine the forfeitability of specific property, if the jurors return a verdict of guilty. Fed. R. Crim. P. 32.2(b)(5). During such a proceeding, the United States must

show by a preponderance of the evidence that the specific property is forfeitable as property that constitutes or is derived, directly or indirectly, from process proceeds traceable to the offense. *See United States v. Kanakeswaran*, ---F. App'x.---, No. 19-50016, 2020 WL 6075746, *2 (9th Cir. Oct. 15, 2020) ("Because forfeiture is essentially a sentencing enhancement, the government bears the burden of proving the amount subject to forfeiture by a preponderance of the evidence."); *United States v. Garcia-Guizar*, 160 F.3d 511, 518 (9th Cir. 1998) (preponderance standard is constitutional because criminal forfeiture is not a separate offense, but only an additional penalty for an offense that was established beyond a reasonable doubt).

Here, the indictment alleges that three items of specific property are subject to forfeiture:

a. $536,422.59 in funds from Wells Fargo Account # 6278570285, in the name of Universal Medical Solutions LLC;

b. $269,952.56 in funds from Wells Fargo account # 6278570293, in the name of Universal Medical Solutions LLC; and

c. Real property located at 5034 Bluff Place, El Cajon, California 92020.

By their motion, Defendants have requested a jury determination, which is consistent with Rule 32.2(b)(5). Accordingly, the United States shall present evidence that those specific properties are subject to forfeiture, and will submit separate forfeiture jury instructions.

**3. OTHER ACT EVIDENCE SHOULD BE PERMITTED AS INEXTRICABLY INTERTWINED OR UNDER RULE 404(b)**

For the reasons set forth in the United States' motions *in limine*, the Court should admit evidence of: (1) Defendants' involvement in genetic testing as inextricably intertwined with the charged offenses; and (2) Bell JR's Payroll Protection Program ("PPP") loan fraud under Rule 404(b).

While Bell JR's false statements in the PPP loans were made after the charged conduct, the existing exceptions to Rule 404(b)'s general bar against the admission of

propensity evidence allow for the introduction of both prior and subsequent bad acts evidence. *See, e.g., United States v. Hinostroza*, 297 F.3d 924, 928 (9th Cir. 2002) ("Our precedent has squarely resolved in the government's favor the issue that subsequent Rule 404(b) evidence may be relevant and admissible.") (citing *United States v. Bibo-Rodriguez*, 922 F.2d 1398, 1400 (9th Cir. 1991) ("By its very terms, 404(b) does not distinguish between 'prior' and 'subsequent' acts."); *see also, e.g., United States v. Mohr*, 318 F.3d 613, 617 (4th Cir. 2003); *United States v. Anifowoshe*, 307 F.3d 643, 646-47 (7th Cir. 2002); *United States v. Germosen*, 139 F.3d 120, 128 (2d Cir. 1998); *United States v. Jones*, 145 F.3d 959, 964 (8th Cir. 1998); *United States v. Latney*, 323 U.S. App. D.C. 417, 108 F.3d 1446, 1449 (D.C. Cir. 1997); *United States v. Delgado*, 56 F.3d 1357, 1364-65 (11th Cir. 1995); *United States v. Osum*, 943 F.2d 1394, 1404 n.7 (5th Cir. 1991).

In *Hinostroza*, 297 F.3d at 928, the Ninth Circuit held that "[w]ith respect to the false statements counts, the subsequent acts [namely, uncharged false statements] show intent, perhaps a common plan to gather more firearms, and an absence of mistake or accident." Here, the United States is seeking to introduce Bell JR's false PPP application statements to a federal agency to show intent, a common plan, and lack of mistake regarding his false statements to Medicare and federal agents. Specifically, in the PPP applications dated April 17 and 21, 2021, Bell JR was asked if he was under indictment:

> Is the Applicant (if an individual) or any owner of the Applicant presently incarcerated or, for any felony, presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction?
> Initial here to confirm your response to question 5 →

Despite being indicted in this case on September 25, 2020, Bell JR checked, "No" and initialed to confirm his response. Bell JR signed the PPP applications certifying the truth of his statements and acknowledging that he could be prosecuted for making false statements under 18 U.S.C. § 1001:

> I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. 1001 . . .

The Court should admit the evidence in the United States' case-in-chief.

### 4. EXPERT TESTIMONY SHOULD BE PERMITTED

For the reasons set forth in the United States' motions *in limine*, the testimony of Stephen Quindoza should be permitted. Timely notice of his testimony was supplied to Defendants on December 1, 2022 to prior counsel, and again to current counsel on January 30, 2023. That notice included all information necessary to comply with the expert witness disclosures set forth in Rule 16(1)(G). *See* Dkt. No. 173-1 (witness disclosure letter).

### 5. DEFENDANTS' TRIAL COMPORTS WITH SPEEDY TRIAL CLAUSE

Defendants initially moved to dismiss based upon an alleged Sixth Amendment Speedy Trial Clause violation due to continuances caused by the pandemic. As Defendants now concede, Dkt. No. 179, p. 1-2, the basis for their motion was rejected by the Ninth Circuit earlier today in *United States v. Walker*, Nos. 21-10364, 21-10365, at *25 (9th Cir. May 30, 2023). *See also United States v. Orozco-Baron*, No. 21-50298 (9th Cir. May 22, 2023) (rejecting claims based upon the Speedy Trial Act); *United States v. Olsen*, 21 F.4th 1036 (9th Cir. 2022) (per curium) (same).

### 6. DEFENDANTS MAY JOIN CO-DEFENDANT'S MOTIONS

The United States does not object to each defendant joining in his co-defendant's motions, where applicable.

### 7. BELL JR IS PROPERLY CHARGED WITH FRAUD AND FALSE STATEMENTS

Bell JR has failed to meet the high burden to show that the false statement counts against him (32-35) are "so manifestly prejudicial" that the Court must sever them for trial from the charges of conspiracy, health care fraud, and kickbacks against him and his father.

Generally speaking, multiple offenses may be joined in the same indictment if they are: of the same or similar character; based upon the same act or transaction; or are in some way connected together or part of a common scheme or plan. Fed. R. Crim. P. 8(a). This rule is "generously construed in favor of joinder." *United States v. Randazzo*, 80 F.3d 623, 627 (1st Cir. 1996).

A court *may* order separate trials of properly joined offenses if the joinder "appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a). Because Rule 14(a) is permissive in nature, the decision of "[w]hether severance is necessary is within the sound discretion of the district court." *United States v. Van Cauwenberghe,* 827 F.2d 424, 431 (9th Cir. 1987), *cert. denied,* 484 U.S. 1042 (1988) (citing *United States v. Ramirez,* 710 F.2d 535, 545 (9th Cir.1983)). In this context, joinder is the rule rather than the exception. Thus, the party seeking severance bears a burden on appeal "to show that joinder was so manifestly prejudicial that it outweighed the dominant concern with judicial economy and compelled exercise of the court's discretion to sever." *United States v. Armstrong,* 621 F.2d 951, 954 (9th Cir.1980).

The prejudice must be of such magnitude that the defendant's right to a fair trial is abridged. *United States v. Lewis*, 787 F.2d 1318, 1321 (9th Cir.1986). Where the defendant's argument for severance is based on his desire to testify about less than all of the charges, he "must show that he has important testimony to give on some counts and a strong need to refrain from testifying on those he wants severed." *United States v. DiCesare*, 765 F.2d 890, 898 (9th Cir.), amended, 777 F.2d 543 (9th Cir. 1985) (citation omitted). Further, he must point to "specific reasons for not testifying about [the other counts]." *Id*. (*quoting United States v. Bronco*, 597 F.2d 1300, 1303 (9th Cir.1979)). *See United States v. Matthews*, 848 F.2d 1243 (9th Cir. 1988).

To meet this standard, a defendant must "present enough information—regarding the nature of the testimony he wishes to give on one count and his reasons for not wishing to testify on the other—to satisfy the court that the claim of prejudice is genuine," as well as "to enable [the court to] intelligently to weigh the considerations of economy and expedition in judicial administration against the defendant's interest in having a free choice with respect to testifying." *United States v. Monteiro*, 871 F.3d 99, 108 (1st Cir. 2017).

In his motion, Bell JR has merely suggested that "the tensions between the [fraud and false statement] aspects of the case ha[ve] raised the serious concern that testimony as to one might be warranted but not the others." Dkt. No. 172, p. 3. This glancing reference

is insufficient to show "that he has important testimony to give on some counts and a strong need to refrain from testifying on those he wants severed." *DeCesare*, 765 F.2d at 898.

Moreover, although it remains Bell JR's burden to identify the prejudice, there does not seem to be any obvious "strong need to refrain from testifying" on one set of charges or the other. Bell JR has suggested that both Defendants' defense "will be that that they did not knowingly violate the Medicare kickback rules and that they were acting in good faith." Dkt. No. 172, p. 3. He does not suggest that he wishes to admit to some of the charges, but contest others. If he wishes to testify in defense of his false statement charges, he can certainly testify that his statements were truthful — that he was the owner of UMS, that he did run the day-to-day operations of UMS, that he and his father built the company from the ground up — and that in running the company he was acting in good faith and was not knowingly paying unlawful kickbacks. If he wishes to testify in defense of the kickback and health care fraud charges, he can similarly explain that he worked at UMS in good faith. Nothing about the nature of the charges against him *requires* that testimony as to one set of charges against him would be necessarily prejudicial against any other.

On the other hand, the witnesses and documentary evidence would be largely overlapping if separate trials were conducted for the Medicare fraud and the false statements charges. The same witnesses and documents needed to prove the fraud allegations would also be necessary to show Bell JR's knowledge of PA Healthcare, his minimal involvement in the "day to day" operations of UMS, and the close association of Bell JR and his father with Burruss, who supplied the funds to start up UMS and remained an investor in Bell JR's company.

The strong interest in judicial economy, and the need for responsible stewardship over the resources of the jury, Court, and appointed counsel, strongly weigh against severance.

### 8. ATTORNEY VOIR DIRE SHOULD BE PERMITTED

If the Court permits it, counsel for the United States respectfully requests time to conduct its own limited *voir dire* of the potential jurors.

However, the Court should preclude Defendant from referencing that they are represented by court appointed counsel. While not addressed in the Ninth Circuit, there are numerous reported cases in which this issue was raised as a claim of ineffective assistance of counsel. In each of these cases, counsel's comments were held to be error. *See Thompson v. Haley*, 255 F.3d 1292, 1304 (11th Cir. 1982) ("We reiterate that a lawyer does not service his or her client by telling the jury that they have been court appointed."); *see also Goodwin v. Balkcom*, 684 F.2d 794, 805-06 (11th Cir. 1982).

### 9. COURT MAY SEND INDICTMENT TO JURY ROOM

As reflected in the comment to Ninth Circuit Model Jury Instruction 6.2, "The trial judge has wide discretion as to whether the jury should be provided with a copy of the indictment for use during jury deliberations. The Ninth Circuit has said that when a district judge permits the jury to have a copy of the indictment, the court should caution the jury that the indictment is not evidence." Model Jury Instruction 6.2, Comment (citing *United States v. Utz*, 886 F.2d 1148, 1151-52 (9th Cir. 1989) (per curiam) (permissible to give each juror a copy of indictment if judge cautions jury that indictment is not evidence)).

The United States defers to the Court's typical practice when it comes to sending the indictment to the jury room.

### 10. EVIDENCE OF FINANCIAL CONDITION IS RELEVANT

Defendants move to exclude evidence of poverty or poor financial condition. Dkt. No. 172, p. 11. But Bell SR and Bell JR did not live in poverty – far from it. Instead, there is relevant evidence in the record that: (1) Bell SR expected the DME company he had opened in Memphis to receive $2 million from Medicare for DME claims; (2) Bell JR wanted $1 million in his bank account; (3) Bell JR took $300,000 out of UMS's bank account to buy a Bentley for Bell SR's birthday, which was supposed to have been saved in case Medicare tried to claw-back wrongly-paid DME claims; (4) Bell SR said he wanted to expand his business because he wanted to purchase two houses, one costing $3 million and another costing $2.5 million ("these are the things I f---ing gotta have," he told a

cooperator); and (5) at least $549,000 in Medicare proceeds were used to purchase Bell SR's $2.4 million house in El Cajon.

"Wealth evidence, unlike poverty evidence, does not entail the same risk of unfair prejudice." *United States v. Flores*, 510 F. App'x 594, 595 (9th Cir. 2013). As with evidence of poverty, evidence of wealth or lavish lifestyle is not admissible standing alone but may be admissible to prove motive, knowledge, or intent. *See United States v. Weygandt*, 681 F. App'x 630, 633 (9th Cir. 2017) (evidence of wealth admissible to show defendant could have purchased necessary equipment but chose not to in order to enhance wealth); *United States v. Reyes*, 660 F.3d 454, 464 (9th Cir. 2011) (evidence of gains from stock option backdating is admissible to permit "jury to draw a reasonable inference that [defendant] knew what he was doing"). As a trial court recently explained,

> As in *Reyes*, each time [Elizabeth] Holmes made an extravagant purchase, it is reasonable to infer that she knew her fraudulent activity allowed her to pay for those items… While the benefits of these purchases are not as directly tied to the fraud as backdating stocks was in *Reyes*, it may still be probative of Holmes's scienter. Therefore, this evidence passes the minimal threshold for relevance.

*United States v. Holmes*, No. 5:18-CR-00258-EJD-1, 2021 WL 2044470, at *4 (N.D. Cal. May 22, 2021) (*citing Reyes*, 660 F.3d 464).

To be sure, the jury will hear — at Defendants' request — evidence of the amount they earned from the DME business, and at least one example of how they spent those proceeds (purchase of Bell SR's house), as part of their request for jury adjudication of the forfeiture allegations. And here, there is not merely a reasonable inference to be drawn, as in *Reyes* and *Holmes*, but direct evidence of the connection between the luxuries Defendants desired and the money they procured from defrauding Medicare. They asked to buy more D.O.'s from the cooperator, in order to make more money -- to reach $1 million in the bank account or buy fancy houses. They had a spat with Burruss because they spent money on the Bentley that was supposed to be reserved to protect the business from recoupment by Medicare.

The evidence that Defendants wanted to submit more DME claims to Medicare, to make more money, passes the minimal threshold for relevance and should be admitted.

## 11. PRELIMINARY JURY INSTRUCTION CONFERENCE SHOULD BE HELD

The United States agrees and anticipates that the Court will give some preliminary instructions to the jury. The United States will submit proposed jury instructions in accordance with chambers rules.

## 12. EVIDENTIARY OBJECTIONS SHOULD BE PERMITTED DURING TRIAL

The United States agrees that evidentiary disputes may arise prior to and during trial, and should be considered and ruled upon as soon as they are raised, in the ordinary course.

## II
## CONCLUSION

For the reasons stated above, the United States respectfully requests that this Court deny Defendants' motions *in limine* except where unopposed.

DATED: May 30, 2023.

Respectfully submitted,

RANDY S. GROSSMAN
United States Attorney

*/s/ Christopher Alexander*
CHRISTOPHER ALEXANDER
Assistant U.S. Attorney

*/s/ Valerie H. Chu*
VALERIE H. CHU
Assistant U.S. Attorney