UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ANTHONY DUANE BELL, SR. (1),<br>ANTHONY DUANE BELL, JR. (2),<br><br>Defendants. | Case No.:  20cr2887-WQH<br><br>**ORDER** |

HAYES, Judge:

The matters before the Court are: (1) the Motion in Limine to Sever Counts (ECF No. 171 at 3-7), filed by Defendant Anthony Duane Bell, Sr. ("Bell Sr."), and the Motion in Limine to Sever Counts (ECF No. 172 at 3-5), filed by Defendant Anthony Duane Bell, Jr. ("Bell Jr."); and (2) the Motion to Dismiss under the Speedy Trial Clause (ECF No. 171 at 11-16), filed by Bell Sr.

## BACKGROUND

On September 18, 2020, a federal grand jury returned a 35-count indictment charging Defendants Bell Sr. and Bell Jr. (collectively, the "Bells") in Count 1 with conspiracy to commit health care fraud in violation of 18 U.S.C. § 371, in Counts 2-8 with health care fraud in violation of 18 U.S.C. § 1347, in Counts 9-30 with payment of illegal remuneration (kickbacks) in violation of 42 U.S.C. § 1320a-7b(b)(2)(A), and with criminal

1

forfeiture. Bell Jr. is also charged in Counts 31-35 with making false statements in violation of 18 U.S.C. § 1001.

On May 15, 2023, the parties filed their respective motions in limine in advance of the trial date set for June 27, 2023. (ECF Nos. 171 (Bell Sr.), 172 (Bell Jr.), 173 (Government).) On May 30, 2023, the parties filed their respective responses to the motions in limine. (ECF No. 179 (Bells), 180 (Government).)

On June 7, 2023, the Court conducted a hearing on the motions in limine. (ECF No. 183.) The Court ruled orally on the majority of the motions, but took some motions under advisement, including the motions by each Defendant to sever the false statement counts alleged against Bell Jr. (ECF No. 171 at 3-7 (Bell Sr.); ECF No. 172 at 3-5 (Bell Jr.)), and the Motion to Dismiss the Indictment pursuant to the Sixth Amendment's Speedy Trial Clause, filed by Bell Sr. (ECF No. 171 at 11-16) and joined by Bell Jr. (ECF No. 172 at 13). At the hearing, the Court permitted the parties to file additional briefing on these pending motions.

On June 8, 2023, the Government filed a Supplemental Memorandum Re: Defendants' Motions to Dismiss under the Speedy Trial Clause. (ECF No. 184.)

On June 12, 2023, Bell Sr. filed a brief identifying specific portions of Bell Jr.'s April 9, 2019 statement to law enforcement that reference Bell Sr. (ECF No. 185.)

On June 14, 2023, the Government filed a Supplemental Response to Bell Sr.'s Motion to Sever. (ECF No. 186.)

## DISCUSSION

### I.    Motions to Sever

#### A. Contentions of the Parties

Bell Sr. contends that "[t]he false statement charges only involve Anthony Bell Junior and implicate Anthony Bell Senior in the fraud counts: severance is appropriate." (ECF No. 171 at 3.) Bell Sr. contends that "[t]he statements given by Anthony Bell Junior were made to an FBI agent investigating a crime" and "are testimonial" pursuant to *Crawford v. Washington*, 541 U.S. 36 (2004). (*See* ECF No. 171 at 3.) Bell Sr. contends

that "Bell Junior's charged Section 1001 statements in Counts thirty-one to thirty-five … specifically implicate Bell Senior on other counts that are charged in the indictment," and therefore are inadmissible pursuant to *Bruton v. United States*, 391 U.S. 123 (1968). (*See* ECF No. 171 at 6-7.)

Bell Jr. contends that "[t]he Court should sever the § 1001 Counts (31-35)." (ECF No. 172 at 3.) Bell Jr. contends:

> Where a defendant is charged in two counts, and wishes to testify at trial on one count, but desires not to testify on the second count, the joinder of the counts for trial prejudices the defendant, and a request for severance of the counts should be granted. Prejudice to a defendant by joinder of offenses may arise in that: 1) the defendant may become embarrassed or confounded in presenting separate defenses; 2) the jury may use evidence of one crime to infer a criminal disposition of the defendant and find him guilty of the other crime; or 3) the jury may cumulate the evidence of various crimes charged and find guilty when, if considered separately, it would not so find. Any [of] these situations serves as a basis for severance of counts.
>
> In this case, no decision to testify has been made; indeed it would not likely come until the close of the Government's evidence. However, without revealing too much in the way of attorney-client privileged discussions, the tensions between the 2 aspects of the case (fraud v. false statements) has raised the serious concern that testimony as to one might be warranted but not the other.

*Id*. (citations omitted).

The Government opposes the motions to sever. The Government contends that "Bell Jr.'s statements are not being offered for their truth…. On the contrary, Bell Jr.'s statements were false and he is being prosecuted for those false statements. Thus, introducing Bell Jr.'s false statements would not violate the Confrontation Clause." (ECF No. 180 at 3.) The Government contends: "Bell Jr.'s false statements tended to minimize Bell Sr.'s (and his own) role in any crimes. Additional evidence is required to prove that Bell Sr. was involved in the criminal scheme. Thus, the introduction of Bell Jr.'s statements would be consistent with the *Bruton* rule and the trial need not be severed." *Id*. at 3-4. The Government also contends that "Bell Jr. has failed to meet the high burden to show that the false statement

counts against him (32-35) are 'so manifestly prejudicial' that the Court must sever them for trial from the charges of conspiracy, health care fraud, and kickbacks against him and his father." *Id*. at 7 (quoting *United States v. Armstrong*, 621 F.2d 951, 954 (9th Cir. 1980)).

## B. Analysis

### 1. Bell Sr.'s Motion to Sever

"Defendants jointly indicted ordinarily should be jointly tried. Serious consideration must be given to judicial economy. The burden is on the defendant to show 'clear,' 'manifest,' or 'undue' prejudice from a joint trial." *United States v. Mikhel*, 889 F.3d 1003, 1046 (9th Cir. 2018) (quoting, *inter alia*, *United States v. Polizzi*, 801 F.2d 1543, 1553-54 (9th Cir. 1986)). "Severance should be granted 'only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" *Id*. (quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993)). "[L]ess drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Zafiro*, 506 U.S. at 539.

In *Bruton*, "the Supreme Court held that a defendant is deprived of his Sixth Amendment right of confrontation when a facially incriminating confession of a nontestifying codefendant is introduced at their joint trial, even if the jury is instructed to consider the confession only against the codefendant." *Mikhel*, 889 F.3d at 1044 (citing *Bruton*, 391 U.S. at 126). "This holding 'recognized a narrow exception' to the 'assumption of the law that jurors follow their instructions.'" *Id*. (quoting *Richardson v. Marsh*, 481 U.S. 200, 206-07 (1987)). The Supreme Court "narrowed *Bruton*'s scope in *Richardson*, where it held that there is no Confrontation Clause violation if the codefendant's confession must be linked to other evidence to incriminate the defendant." *Id*. (citing *Richardson*, 481 U.S. at 208). "The *Bruton* rule is thus 'limited to facially incriminating confessions.'" *Id*. (quoting *Richardson*, 481 U.S. at 206). The Court of Appeals for the Ninth Circuit has "held that '[a] statement is not facially incriminating merely because it identifies a defendant; the statement must also have a sufficiently devastating or powerful inculpatory impact to be incriminatory on its face.'" *Id*. (quoting *United States v. Angwin*, 271 F.3d

786, 796 (9th Cir. 2001), *overruled on other grounds by United States v. Lopez*, 484 F.3d 1186 (9th Cir. 2007) (en banc)); *see also United States v. Yarbrough*, 852 F.2d 1522, 1537 (9th Cir. 1988) ("*Bruton* does not require that *all* extrajudicial statements or confessions not be used in a joint trial. Rather, only those statements that 'clearly inculpate' the defendant or are 'powerfully incriminating' implicate the '*Bruton*' rule.").

At issue are statements made by Bell Jr. to FBI Agents Todd Townsend and Andres Aguirre during an interview conducted on April 9, 2019.[1] Bell Sr. filed a supplemental brief listing the excerpts of Bell Jr.'s April 9, 2019 interview that Bell Sr. contends incriminates Bell Sr. (ECF No. 185.) The Government filed a response brief stating that it agrees not to introduce a majority of the statements identified by Bell Sr. (ECF No. 186 at 2.) The Government identified three excerpts from the transcript of Bell Jr.'s April 9, 2019 interview that remain in dispute. The Court assumes for the purpose of this ruling that each of the statements in the three disputed excerpts are testimonial. The issue then is whether any of Bell Jr.'s statements in the three disputed excerpts are "facially incriminating" as to Bell Sr. so as to trigger the *Bruton* rule. *Richardson*, 481 U.S. at 207.

### a. First Disputed Excerpt

The first disputed excerpt from Bell Jr.'s April 9, 2019 interview is as follows:

> Tony Townsend ("TT"): Um, but for you now, um getting into this, you said your father was a consultant, was he working with a [durable medical equipment ("DME")] company before this, is that how he came to know it or medical company?
>
> Bell Jr.: Nah, no-no, we just-we just started this together.
>
> TT: You started this together? He is, so he didn't never work for any other DME company before this?
>
> Bell Jr.: No we just started right here from the ground up.
>
> TT: Okay, um did he ever work for any other medical company before that or just?

---

[1] The facts surrounding the April 9, 2019 interview are detailed in the Court's May 23, 2023 Order denying the Motion to Dismiss and Motions to Suppress filed by Bell Jr. and Bell Sr. (ECF No. 177.) The May 23, 2023 Order is incorporated by reference herein.

Bell Jr.: Yeah, he did some hardware medical before, yeah.

TT: Like hardware?

Bell Jr.: Nah.

TT: Okay, what-what kind of medical business?

Bell Jr.: Like medical like um, pharmacy type of hard to find injectables.

TT: Hard to find injectables, okay, do you remember who that was with? Or where that was?

Bell Jr.: Nah, I just remember he used to do that though.

TT: Okay, how long ago was that?

Bell Jr.: While ago, a long time ago.

TT: And when did you guys start? Um...

Bell Jr.: 2016.

TT: 2016. Um so, was he working all the way till 2016?

Bell Jr.: Uh no, actually it was a while ago before he was working there and then we kind of started this.

(April 9, 2019 Bell Jr. Interview Trans. at 21-22, ECF No. 106-5.)

The statement in this excerpt that Bell Sr. had never worked for a DME company prior to working at Universal Medical Solutions is charged in Count 33 as a false statement in violation of 18 U.S.C. § 1001. The statement in this excerpt that "we just started right here from the ground up" is charged in Count 34 as a false statement in violation of 18 U.S.C. § 1001. The Government states that it "intends to introduce [the above-quoted first disputed excerpt] as one continuous excerpt." (ECF No. 186 at 2.) Accordingly, in ruling on the Motion to Sever, the Court considers this excerpt as a single continuous unit.

The premise of the Government's case as charged in the Indictment is that Universal Medical Solutions was formed for the purpose of defrauding Medicare. In the context of this case, Bell Jr.'s statement that Bell Sr. was involved in Universal Medical Solutions "from the ground up" is sufficiently incriminatory that the Court lacks confidence a jury could follow a limiting instruction to not consider this statement as evidence against Bell Sr. As stated in *Bruton*, "there are some contexts in which the risk that the jury will not, or

cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored. Such a context is presented here, where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial." *Bruton*, 391 U.S. at 135-36. Pursuant to *Bruton*, the Court prohibits the Government from eliciting testimony or introducing evidence of the first disputed excerpt quoted above in the joint trial scheduled to begin on June 27, 2023. The Court grants the Motions to Sever Counts 33 and 34, which concern statements in the first disputed excerpt.

### b.  Second Disputed Excerpt

The second disputed excerpt from Bell Jr.'s April 9, 2019 interview is as follows:

TT: Um, are you familiar with uh Charles Burris? [Pauses] Yes?

Bell Jr.: Hm…mm

TT: Who's that?

Bell Jr.: A friend.

TT: Okay, um like how? Like friends um from like, you went to high school together or what?

Bell Jr.: My dad grew up with him.

TT: Your Dad grew up with him, okay. Um, what do you--do you still talk with him or?

Bell Jr.: Yeah, every now and then.

TT: Yeah? What does he do?

Bell Jr.: Uh, he runs a company as you guys know.

TT: Okay, so he runs

Bell Jr.: [laughs] He has a DME company [laughs].

TT: He runs a DME company, okay. Alright.

Bell Jr.: Yeah, you guys know that already.

TT: Yeah, and so was he--was he the one who provided the seed money?

Bell Jr.: Yes, he did.

TT: Okay, um, and what else? I mean--

Bell Jr.: That's it, he's just a friend and we definitely paid him back.

TT: Okay, um and is he with Everprime concepts? Yes? Okay. Um and what do they do?

Bell Jr.: I have no idea what really. In fact I don't know all that stuff, so I can't even tell you.

TT: Okay.

Bell Jr.: I don't know all that.

TT: But, he is with Everprime concepts. You're saying.

Bell Jr.: Yeah, I think he is.

TT: Okay, um and um do they do DME?

Bell Jr.: Uh I'm not sure, I can't really tell you that I don't know what all they do.

TT: Okay

Bell Jr.: So I can put it all on the table, I really don't know.

TT: I don't want you to answer something you don't know. So that's totally fine.

Bell Jr.: Yeah, I don't know--I don't know.

TT: Um, do you know somebody named Armani Adams?

Bell Jr.: Yeah.

TT: Who's that?

Bell Jr.: Friend of his.

TT: Okay, friend of yours?

Bell Jr.: Everprime.

TT: He's also with Everprime?

Bell Jr.: He's Everprime, I know he's Everprime.

(April 9, 2019 Bell Jr. Interview Trans. at 27-29, ECF No. 106-5.)

There is nothing facially incriminatory about Bell Jr. saying Bell Sr. grew up with Charles Burruss or that they paid Burruss back for the "seed money" he loaned them. Bell Jr.'s statements are not facially incriminatory; instead, they could only incriminate Bell Sr.

when connected to other evidence. The Supreme Court has "specifically exempt[ed from *Bruton*'s rule] a statement, not incriminating on its face, that implicates the defendant only in connection to other admitted evidence." *Mason v. Yarborough*, 447 F.3d 693, 695 (9th Cir. 2006) (citing *Richardson*, 481 U.S. at 211); *see also Gray v. Maryland*, 523 U.S. 185, 195 (1998) ("*Richardson* placed outside the scope of *Bruton*'s rule those statements that incriminate inferentially."); *cf. Mikhel*, 889 F.3d at 1044 ("[T]here is no Confrontation Clause violation if the codefendant's confession must be linked to other evidence to incriminate the defendant."). The introduction of evidence of Bell Jr.'s statements in the second disputed excerpt is not forbidden by *Bruton* and the trial of Bell Sr. and Bell Jr. need not be severed on this basis. The Court finds that a limiting instruction is sufficient to cure any potential prejudice to Bell Sr. caused by the introduction of Bell Jr.'s statements in the second disputed excerpt.

### c. Third Disputed Excerpt

The third disputed excerpt from Bell Jr.'s April 9, 2019 interview is as follows:

> TT: Okay, okay. Um, do you guys ever, I mean, did you guys ever do business together? Everprime and Universal?
>
> Bell Jr.: Like Everprime was own separate, like I say I don't know what they all do, so.
>
> TT: Yeah, I get it and I understand um, sometimes it's hard to answer specifically so I mean if I need to ask a question a different way, you can tell me that, and that's fine.
>
> Bell Jr.: What exactly do you mean? Like what do you--what do you--
>
> TT: So, so what I'm getting at right is that um, Everprime is related with Mr. Adams and Mr. Burruss right and then they also run a medical company, is that what you're saying?
>
> Bell Jr.: Hm...mm.
>
> TT: Um and you guys got started, 2016.
>
> Bell Jr.: But it wasn't Everprime, but Everprime wasn't even around.
>
> TT: Well, what ever the company was. I mean, you can just tell me what the company was, was before.
>
> Bell Jr.: I'm not—I'm not even sure, it was just Charles.
>
> TT: Just Charles.

Bell Jr.: Charles helped us out but you know like I said, it's been paid back.

TT: Okay.

Bell Jr.: Borrowed some money, and then um Everprime, they--they just do a lot of different, I don't know, they do a lot of different shit.

TT: Hm...mm. Like what?

Bell Jr.: I have no idea, couldn't even tell you.

TT: Um now, are they the ones who helped you get an understanding of how this business worked or helped your father?

Bell Jr.: No, not at all.

TT: No. Um, did they provide any connections, any marketers or anything like that?

Bell Jr.: No

TT: No? Okay, um and let me see. Think I have just a couple more names just to ask, tell me if you know. Um, bear with me. Here ya go, right here, um you told me about Bentley, correct? Um, you told me about Everprime. Um, uh do you know Pantheon and Chronos?

Bell Jr.: I think we worked with them before.

TT: Who's that?

Bell Jr.: I'm not sure who he exactly is but I know we worked with them.

TT: You don't um,

Bell Jr.: You ask me, we don't--we haven't worked them in a long time. We worked with them like right in the beginning.

TT: Oh did you? Okay

Bell Jr.: Right in the beginning.

TT: And what did they do?

Bell Jr.: Uh, kind of marketing place, marketing here.

TT: Okay.

Bell Jr.: But that was a long time ago.

TT: How long ago?

Bell Jr.: Year or two ago.

1
2
3
4
5

TT: Year or two ago, okay, alright. Um and how much was the seed money that you got started with, with um Mr. Burrus.

Bell Jr.: Couple hundred grand.

TT: Couple hundred grand. Like two hundred grand?

Bell Jr.: Yes. About right.

6

(April 9, 2019 Bell Jr. Interview Trans. at 30-31, ECF No. 106-5.)

7   There is nothing facially incriminatory about Bell Jr. saying he and his father
8   received an initial investment of "seed money" from Burruss and denying that Burruss and
9   Adams otherwise helped them. Similar to the second disputed excerpt, the statements in
10  the third disputed excerpt could only incriminate Bell Sr. when connected to other
11  evidence. Therefore, the introduction of evidence of Bell Jr.'s statements in the third
12  disputed excerpt is not forbidden by *Bruton* and the trial of Bell Sr. and Bell Jr. need not
13  be severed on this basis. The Court finds that a limiting instruction is sufficient to cure any
14  potential prejudice to Bell Sr. caused by the introduction of Bell Jr.'s statements in the third
15  disputed excerpt.

16  Bell Sr.'s Motion to Sever is granted as to the first disputed excerpt and denied as to
17  the second and third disputed excerpts. No later than Monday, June 26, 2023, the
18  Government shall file a proposed limiting instruction to be read by the Court prior to the
19  introduction of second and third disputed excerpts.

20  **2. Bell Jr.'s Motion to Sever**

21  Bell Jr. moves for a severance of the false statement counts because he has "serious
22  concern" that he may wish to testify as to either the fraud counts or the false statement
23  counts "but not the other." (ECF No. 172 at 3.) Because the Court has already determined
24  that Counts 33 and 34 must be severed pursuant to the *Bruton* rule, the Court only considers
25  Bell Jr.'s Motion to Sever as it relates to the remaining unsevered false statement counts,
26  Counts 31, 32, and 35. Count 31 charges that Bell Jr. made a false statement in a Medicare
27  enrollment application on June 2, 2017. Count 32 charges that Bell Jr. made a false
28  statement during the April 9, 2019 interview when Bell Jr. stated that he had never heard

20cr2887-WQH

of a company called "PA Healthcare." Count 35 charges that Bell Jr. made a false statement during the April 9, 2019 interview when Bell Jr. stated that he ran the "day to day operations" at Universal Medical Solutions.

Federal Rule of Criminal Procedure 14(a) states that "[i]f the joinder of offenses or defendants in an indictment … or a consolidation for trial appears to prejudice a defendant …, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." To justify severance of counts on the basis that a defendant "wishe[s] to testify on one count but not on all counts," a defendant "must show that he has important testimony to give on some counts and a strong need to refrain from testifying on those he wants severed." *United States v. DiCesare*, 765 F.2d 890, 898 (9th Cir. 1985) (quoting *United States v. Nolan*, 700 F.2d 479, 483 (9th Cir. 1983)).

Bell Jr. has failed to make the necessary showing to sever the remaining unsevered false statement counts, Counts 31, 32, and 35. Bell Jr. has "failed to list 'the specific testimony he will present about one offense, and his specific reasons for not testifying about others.'" *DiCesare*, 765 F.2d at 898 (quoting *United States v. Bronco*, 597 F.2d 1300, 1303 (9th Cir. 1979)). Absent such a showing, the Court will adhere to the "[o]rdinar[]y" rule that "joint trials are permitted to promote judicial economy in spite of the dangers that the jury will be influenced by all the evidence in ruling on each charge." *Bronco*, 597 F.2d at 1303. Bell Jr.'s Motion to Sever is denied.

## II.    Motion to Dismiss Pursuant to the Speedy Trial Clause

Bell Sr. (and Bell Jr. via joinder) moves for the dismissal of the Indictment based upon a Sixth Amendment Speedy Trial Clause violation, arguing that the Southern District of California "Chief Judge Orders which suspended jury trials [during the COVID-19 pandemic] were overbroad and resulted in prejudicial delay to the Bells." (ECF No. 171 at 13.) Bell Sr. also stated that "[t]he Bells recognize that they do not have a claim under the Speedy Trial Act after *United States v. Olsen*, 21 F.4th 1036 (9th Cir. 2022), held that coronavirus shutdown orders were proper under the Speedy Trial Act." (ECF No. 171 at 11.) In a subsequent filing, Bell Sr. conceded that, after the filing of the pending Motion to

Dismiss, the Court of Appeals for the Ninth Circuit issued an order "reject[ing] the Sixth Amendment Speedy Trial Clause claim against the coronavirus shutdowns." (ECF No. 179 at 1-2 (citing *United States v. Walker*, 68 F.4th 1227, 1235 (9th Cir. 2023).) Despite Bell Sr.'s concessions, the Court considers the Bells' claim on the merits.[2]

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. "To give effect to this right, Congress enacted the Speedy Trial Act, which sets time limits between an accused's arraignment or indictment and when that person's criminal trial must commence." *Walker*, 68 F.4th at 1235. The Speedy Trial Act requires that a criminal trial begin within seventy days from either the date on which an indictment was filed, or the date on which a defendant makes an initial appearance, whichever is later. *See* 18 U.S.C. § 3161(c)(1). "But the Act contains 'a long and detailed list of periods of delay that are excluded in computing the time within which trial must start.'" *Walker*, 68 F.4th at 1235 (quoting *Zedner v. United States*, 547 U.S. 489, 497 (2006); citing 18 U.S.C. § 3161(h)). Most notably, the ends of justice provision allows for the exclusion of time if a court finds "that the ends of justice served by taking such action [in continuing a trial and excluding time] outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A).

"In determining whether the ends of justice outweigh the best interest of the public and the defendant in a speedy trial, the district court must evaluate, 'among others,' several enumerated factors, each of which can be sufficient to warrant an exclusion of time if present." *Walker*, 68 F.4th at 1235 (quoting, *inter alia*, 18 U.S.C. § 3161(h)(7)(B)). The first factor is "[w]hether the failure to grant such a continuance in the proceeding would be

---

[2] Although the Motion to Dismiss was filed by Bell Sr., it has been joined by Bell Jr. The Court's findings and rulings related to the speedy trial issue are equally applicable to Bell Sr. and Bell Jr., unless otherwise noted.

likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice." 18 U.S.C. § 3161(h)(7)(B)(i).

In the context of the COVID-19 pandemic, the Ninth Circuit has found relevant the following non-exhaustive factors: (1) whether a defendant is detained pending trial; (2) how long a defendant has been detained; (3) whether a defendant has invoked speedy trial rights since the case's inception; (4) whether a defendant, if detained, belongs to a population that is particularly susceptible to complications if infected with the virus; (5) the seriousness of the charges a defendant faces, and in particular whether the defendant is accused of violent crimes; (6) whether there is a reason to suspect recidivism if the charges against the defendant are dismissed; and (7) whether the district court has the ability to safely conduct a trial. *Olsen*, 21 F.4th at 1046. "[T]he *Olsen* factors are not exhaustive when applied to pandemic-related continuances, and the ultimate touchstone is still the statute—18 U.S.C. § 3161(h)(7)." *Walker*, 68 F.4th at 1236.

The Bells were indicted on September 18, 2020 and they appeared on the Indictment on September 25, 2020. Their trial is scheduled to begin on June 27, 2023, approximately 33 months after their first appearance. The delay here is longer than the 557-day delay between indictment and trial at issue in *Walker*. While the delays occasioned by the COVID-19 pandemic in this case are materially identical to the delays addressed in *Walker* and in *United States v. Orozco-Barron*, 67 F.4th 1203, 1213 (9th Cir. 2023)—two cases which originated in this District—there are significant additional causes for the delays in this case that were not present in *Walker* and *Orozco-Barron*.

Prior to addressing the additional causes for delays in this case, the Court first notes that the *Olsen* COVID-19 factors weigh more heavily in favor of excluding time here than in *Walker* and *Orozco-Barron*. Unlike in those cases, the Bells have spent no time in custody, having been released on bond during the pendency of pretrial proceedings. And unlike in those cases, the Bells failed to invoke speedy trial rights until late in the case, when Bell Sr. filed the pending Motion to Dismiss on May 15, 2023. The Court will not detail the Chief Judge Orders that declared a judicial emergency and suspended Speedy

Trial Act time limits in this District, since they are recounted in *Orozco-Barron*, 67 F.4th at 1208-1210.

The COVID-19 pandemic was only one of many reasons for continuances in this case. As noted above, after the Bells self-surrendered and were arraigned on September 25, 2020, the Bells remained out of custody. Retained counsel, James Samuel Bell ("Attorney Bell"), entered an appearance on behalf of the Bells at the arraignment. On November 13, 2020, the Parties filed a joint motion to continue the motion hearing and trial setting, and motion to exclude time. (ECF No. 25.)  On November 16, 2020, the Court issued an order granting the joint motion to continue and excluding time pursuant to 18 U.S.C. §§ 3161(h)(7)(A), (h)(7)(B)(i), and (h)(B)(iv). (ECF No. 26.) On February 4, 2021, the Court issued an order making findings to exclude time, in part, due to the COVID-19 pandemic. (ECF No. 42.)

On March 18, 2021, the Government filed a motion for a hearing regarding a potential conflict of interest due to the Bells' joint representation by Attorney Bell. (ECF No. 56.)

On March 23, 2021, the Court entered an order continuing the motion hearing and trial setting, and excluding time. (ECF No. 62.) On March 24, 2021, the Court entered another order and findings of fact excluding time due to the pandemic. (ECF No. 63.)

On March 26, 2021, the Court entered an order granting the Bells' motion for extension of time to respond to the Government's pending motion for a hearing regarding a potential conflict of interest.

On May 5, 2021, the Court entered an order and findings of fact excluding time due to the pandemic. (ECF No. 69.)

On July 1, 2021, the Court conducted a hearing on the Government's conflict motion, continued the matter, and excluded time. (ECF No. 77.)

On August 3, 2021, the Court conducted a hearing and granted Attorney Bell's motion to withdraw and excluded time for the Bells to locate substitute counsel. (ECF No. 85.)

On September 19, 2021, retained counsel Marcel Stewart ("Attorney Stewart") entered an appearance on behalf of Bell Sr. (ECF No. 93.)

On September 20, 2021, the Court conducted a hearing and granted Bell Jr.'s request for more time to find counsel, and excluded time. (ECF No. 94.)

On October 24, 2021, retained counsel Dante Pride ("Attorney Pride") entered an appearance on behalf of Bell Jr. (ECF No. 97.)

On October 27, 2021, the Court conducted a status hearing. The Court set a briefing schedule for substantive motions and a motion hearing date of January 24, 2022, and excluded time until the motion hearing date. (ECF No. 99.)

On January 3, 2022, the Bells filed motions to dismiss, suppress statements, and compel discovery. (ECF Nos. 101, 102, 103.)

On January 19, 2022, the Parties filed a joint motion to continue the motion hearing. (ECF No. 109.) On January 20, 2022, the Court granted the joint motion to continue and excluded time. (ECF No. 110.)

On February 10, 2022, the Court conducted a motion hearing and determined that an evidentiary hearing was necessary to resolve the pending motions to suppress and dismiss. At the hearing, the Court scheduled an evidentiary hearing for February 25, 2022, and excluded time. (ECF No. 113.)

On February 21, 2022, the Parties filed a joint motion to continue the evidentiary hearing, requesting that the evidentiary hearing be moved from February 25, 2022 to a date in July 2022, and to exclude time. (ECF No. 114.) In the joint motion, the Parties stated that the Government had recently made a "packaged" offer to resolve the case, but that the Government was "requiring the defendants to accept the packaged offer and provide signed plea agreements in advance of the evidentiary hearing." *Id*. at 2. The Parties stated that, "[g]iven the seriousness of the charges, consequences of pleading guilty and constitutional rights that the defendants would be giving up, neither defendants nor their counsel believe that such a short period of time allows for adequate consultation and consideration of the

offer," and "in order to fully advise the defendants, counsel must adequately review case discovery, which is voluminous." *Id*.

On February 22, 2022, the Court granted the joint motion and continued the evidentiary hearing to June 23, 2022, and excluded time. (ECF No. 115.)

On June 22, 2022, the Parties filed a joint motion to continue the evidentiary hearing and exclude time. (ECF No. 118.) On June 23, 2022, the Court granted the joint motion, continued the evidentiary hearing to September 7, 2022, and excluded time. (ECF No. 120.)

On August 22, 2022, Attorney Pride filed a motion to withdraw from representation of Bell Jr. (ECF No. 123.)

On September 2, 2022, the Court conducted a hearing and denied Attorney Pride's motion to withdraw. (ECF No. 125.)

On September 7, 2022, the Court conducted an evidentiary hearing on the pending motions to suppress and dismiss, set all remaining pretrial dates, scheduled a motions-in-limine hearing, set a trial date for January 31, 2023, and excluded time. (ECF No. 126.)

In October and November 2022, the Bells mailed a series of pro se letters and other documents to the Court, all counsel, and the Clerk of the Court. (*See*, *e.g.*, ECF Nos. 136-40, 143-49.) On November 15, 2022, in response to these pro se mailings, which seemed calculated to frustrate the orderly progression of this case, the Court set a hearing for December 1, 2022. (ECF No. 142.) During the hearings in December 2022 and January 2023 (the dates of which are outlined below), the Bells refused to meaningfully respond to the Court's questions and instead repeatedly read prepared statements similar in content to some of the pro se mailings.[3]

---

[3]     The Court finds that quoting and/or discussing the contents of each of these pro se letters is neither helpful nor necessary for the Court's ruling.

However, by way of example, some of the letters sent by the Bells adopted a religious tone, such as quotes from Proverbs, and statements such as: "I, Anthony Duane Bell Sr., a sentient moral being, have examined the path my feet are on and have concluded that I have dishonored many including but not limited to … the Clerk of Court United States District Court, the Law, … this honorable Court, its officers and or Employees, and others yet to be determined. I am sorry for my sins and THEREFORE I repent. As

On December 1, 2022, the Court conducted a status hearing. The Court continued the trial date at the request of the Parties to March 28, 2023, and permitted the attorneys representing the Bells to file motions to withdraw. (ECF No. 150.)

On December 21, 2022, the Court conducted a hearing and granted Attorney Stewart's motion to withdraw as counsel for Bell Sr., provisionally appointed an attorney pursuant to the Criminal Justice Act ("CJA"), and excluded time. (ECF No. 153.)

On January 3, 2023, the Court conducted a hearing and granted Attorney Pride's motion to withdraw as counsel for Bell Jr. and provisionally appointed an attorney pursuant to the CJA. (ECF No. 154.)

In January 2022, the Bells continued mailing pro se letters to the Court, the Clerk, and all counsel, including their new, provisionally appointed counsel. (ECF Nos. 155-57, 160.)

On January 9, 2023, the Court conducted a status hearing regarding appointed counsel, decided to keep the counsel appointments provisional, and excluded time. (ECF No. 159.)

On January 30, 2023, the Court conducted a status hearing, confirmed the appointments of separate CJA counsel for the Bells, reset the remaining pretrial dates, reset

---

I become aware of other sins I may have committed, I will repent immediately…. I RESERVE ALL OF MY RIGHTS WITH EXPLICIT RESERVATION AND WITHOUT PREJUDICE." (ECF No. 132 at 1; *see also* ECF No. 131 at 1 (same, signed by Bell Jr.).)

Other letters sent by the Bells at the same time adopted a different tone. For instance, on the same day the Court received the above-quoted letter from Bell Sr., the Court received a second letter from Bell Sr. entitled, "NON-NEGOTIABLE NOTICE OF ACCEPTANCE," which purports to direct his counsel to "perform the following duties: 1. Do not argue any facts in this case. 2. Request the Appearance Bond be Issued waiving all Public costs. 3. Request the Account 3:20-cr-02887-WQH be closed and the order of the court issued to me immediately. 4. Request that all Public Charges be adjusted and set-off by the exemption in accord with Public Policy. 5. Request discharge. Dishonor may be the result if you fail to perform these duties." (ECF No. 133 at 1; *see also* ECF No. 130 at 1 (a letter signed by Bell Jr. informing the Clerk of Court that certain legal filings have "been dishonored or ha[ve] not been paid or accepted" and "I intend to look to you for payment or performance.").) The oral statements read by the Bells to the Court in hearings during this period adopted the language and tenor of the latter group of letters.

1   the trial date to June 26, 2023 at the request of new defense counsel, and excluded time.

2   (ECF No. 162.)

3         On April 17, 2023, the Court granted the Parties' joint motion to continue the

4   motion-in-limine filing dates and hearing date. (ECF No. 168.) The remaining procedural

5   history is set forth at the outset of this Order.

6         The COVID-19 pandemic was in part responsible for some of the delays in this case,

7   as discussed above. However, as outlined above, most if not all of the delays in this case

8   were also either caused by the Bells or were pursuant to motions and continuances

9   requested or joined by the Bells or were undertaken to protect the Bells' right to counsel.

10   The Bells first tried to maintain a joint defense despite seemingly obvious conflicts. Then

11   the Bells' retained counsel delayed addressing the conflict issue. The Bells then had

12   difficulty locating new counsel. Then the new counsel filed substantive motions that

13   required an evidentiary hearing and required substantial time to review the voluminous

14   discovery. Then the Bells and the Government requested time to work on a resolution.

15   Then the Bells disagreed with their retained counsel to the point that their respective

16   relationships with their attorneys deteriorated beyond repair. Then the Bells—while still

17   represented by counsel—embarked on a campaign of pro se letters and nonresponsive oral

18   declarations to the Court, which were legally improper and frivolous, and appeared to be

19   designed to obstruct the progress of the case. Eventually the Court appointed new counsel,

20   who then required time to prepare for trial in a case with a substantial amount of discovery.[4]

21   In short, as the Court found throughout these proceedings, the delays were excludable for

22   specifically enunciated and allowable reasons pursuant to the Speedy Trial Act.

23         As discussed above, apart from the Speedy Trial Act, defendants also have a Sixth

24   Amendment right to a speedy trial, which is the stated basis for Bell Sr.'s pending Motion

25

26

27   [4] The Court notes that, shortly after the appointment of the Bells' current counsel, the Bells ceased their

28   pro se mailings. The Court also notes that, at all times in this case, Bell Sr. and Bell Jr. have each appeared
in Court when required and abided by the conditions of pretrial release.

to Dismiss. "Under the Sixth Amendment, courts … conduct 'ad hoc' balancing of factors including the '[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.'" *Walker*, 68 F.4th at 1238 (quoting *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).

As discussed above, the length of the delay in this case is approximately 33 months, which "is long enough to trigger a *Barker* inquiry." *United States v. Sutcliffe*, 505 F.3d 944, 956 (9th Cir. 2007) (citation omitted). The Court "accordingly turn[s] to the other *Barker* factors to determine whether [the Bells'] constitutional right to a speedy trial was violated." *Id*.

As to the second factor and as discussed above, the delays in this case have been almost entirely caused by the Bells, or undertaken with the express consent of the Bells via joint motions to continue, or undertaken in the interest of justice to protect the Bells' right to counsel. This factor overwhelmingly weighs against the Bells.

As to the third factor, the Bells first asserted their speedy trial rights in the pending Motion to Dismiss filed on May 15, 2023, six weeks before trial and after the case had been pending for over 30 months. Moreover, even if they had asserted their speedy trial rights earlier, such assertions would be "completely belied by [their] conduct" in this case, as outlined above. *Sutcliffe*, 505 F.3d at 957 (citing *United States v. Loud Hawk*, 474 U.S. 302, 314 (1986) (holding that defendants' repeated assertions of their speedy trial right had been contradicted by their filing of multiple frivolous petitions and unsuccessful motions before trial)). Viewed most favorably toward the Bells, this factor is neutral.

As to the fourth factor, "[w]hen a defendant is responsible for the delay, he carries a heavy burden of demonstrating actual prejudice to succeed on a speedy trial claim." *Id*. (quotation omitted). "Actual prejudice can be shown in three ways: oppressive pretrial incarceration, anxiety and concern of the accused, and the possibility that the accused's defense will be impaired." *Id*. (quotation omitted). The Bells contend that they suffered prejudice due to being on bond and, "[g]iven that the charges against the Bells involve Medicare fraud, the elderly witnesses are at risk of greater cognitive decline and the Bells

20cr2887-WQH

understand that at least one substantive witness has passed." (ECF No. 171 at 15.) The Government responds that "the deceased [Medicare] beneficiary has a similar story to the other defrauded beneficiaries," (ECF No. 184 at 5), eight of whom are on the Government's trial witness list. (*See* ECF No. 189 at 8.)

The Court recognizes that "even if an accused is not incarcerated prior to trial, he is still disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility." *Barker*, 407 U.S. at 533. However, the Bells—who have been released on bond throughout the pendency of this case—have requested and been granted modifications of their conditions of pretrial release 18 times, including receiving permission to travel internationally. (*See* ECF Nos. 27, 29, 34, 35, 38, 40, 46, 49, 51, 53, 55, 60, 67, 71, 73, 76, 81, 122.) Moreover, the Court in *Barker* held that a delay between arrest and trial of "well over five years" caused in "good part" by "the Commonwealth's failure" was outweighed by the fact that prejudice was minimal and the fact that the defendant "did not want a speedy trial." 407 U.S. at 533-34. The Court stated:

> We do not hold that there may never be a situation in which an indictment may be dismissed on speedy trial grounds where the defendant has failed to object to continuances. There may be a situation in which the defendant was represented by incompetent counsel, was severely prejudiced, or even cases in which the continuances were granted ex parte. But barring extraordinary circumstances, we would be reluctant indeed to rule that a defendant was denied this constitutional right on a record that strongly indicates, as does this one, that the defendant did not want a speedy trial.

*Id*. at 536.

The Bells have failed to specify how the death of one possible beneficiary witness "severely prejudice[s]" them. There has been no proffer of how that witness' testimony might have been beneficial to the Bells or might have meaningfully differed from the testimony of the eight other beneficiary witnesses expected to testify at trial. The Bells likewise have failed to point to any prospective witness who has suffered cognitive decline during the pendency of this case. Based upon this record, the Court finds that the prejudice to the Bells has been minor, and not sufficiently great to outweigh the factors discussed

above that weigh against the Bells' Motion to Dismiss. Considering the *Barker* factors as a whole, the Court concludes that Bell Sr.'s and Bell Jr.'s Sixth Amendment rights to a speedy trial have not been violated.

## CONCLUSION

IT IS HEREBY ORDERED that Bell Sr.'s Motion to Sever is granted as to the first disputed excerpt and denied as to the second and third disputed excerpts, as discussed above. The Court grants the Motions to Sever Counts 33 and 34, which concern statements in the first disputed excerpt. The Bells' Motions to Sever are otherwise denied. (*See* ECF No. 171 at 3-7; ECF No. 172 at 3-5.) No later than Monday, June 26, 2023, the Government shall file a proposed limiting instruction to be read by the Court prior to the introduction of the second and third disputed excerpts.

IT IS FURTHER ORDERED that the Motion to Dismiss under the Speedy Trial Clause (ECF No. 171 at 11-16) is denied.

Dated:  June 22, 2023

Hon. William Q. Hayes
United States District Court